**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

In re:
CONSOLIDATED INDUSTRIES CORP.    )
            Debtor.    )
_____ )

DANIEL L. FREELAND, Trustee    )      Civil No. 4:04cv65
            Plaintiff,    )
                       )
      vs.    )
                       )
ENODIS CORPORATION, et al.,    )
            Defendants.    )
_____ )

**MEMORANDUM, ORDER & OPINION**

Daniel L. Freeland, as Trustee for Consolidated Industries, Inc., cross-appeals from the

Bankruptcy Court's Decision, proposed findings of fact, conclusions of law, and proposed

judgment in favor of Defendants Welbilt Holding Company, Marion H. Antonini, Daniel Yih,

Richard L. Hirsch, David L. Hirsch, and Lawrence Gross.  For the reasons set forth below, this

Court affirms the Decision of the Bankruptcy Court and accepts the proposed findings of fact

and conclusions of law in their entirety.[1]

The Trustee, pursuant to Bankruptcy Rule 9033, objects to the Bankruptcy Court's

proposed findings of fact and conclusions of law.[2]  For the reasons set forth below this Court

rejects the objections and accepts the Bankruptcy Court's proposed findings of fact and

_____

[1]The issues raised in this cross-appeal are closely related to, and should be read in
conjunction with, this Court's Memorandum, Order & Opinion issued in Civil No. 4:04-CV-64.

[2]The Trustee's objections closely mirror his cross-appeal.  To the extent that they
advance the same arguments they will be dealt with as part of the discussion of his cross-appeal.
The objections that are not raised in his cross-appeal will be discussed separately.

conclusions of law in their entirety.

> I.        Background and Facts

Consolidated was an Indiana corporation and a subsidiary of Welbilt Holding.  Welbilt Holding was, in turn, a subsidiary of Welbilt Corporation now known as Enodis Corporation. Consolidated manufactured and sold furnaces to original equipment manufacturers (OEMS) and it had approximately $8 million in cash in 1988.  In 1987, Congress set new standards for the furnace and appliance industry by passing the National Appliance Energy Consumer Act (42 U.S.C. § 6295), and Consolidated believed that those new standards could affects its production and adversely affect sales.  Consequently, Consolidated believed it would have to invest in redesigning its furnaces and develop an air-conditioner product line.

In August of 1998, Kolhberg & Co., a Wall Street buyout firm, formed Churchill Acquisition Corporation to acquire Welbilt's stock from its public shareholders.  Up until that time, Welbilts primary shareholders were members of the Hirsch Family who founded Welbilt. After a tender offer to Welbilt, Churchill owned 63.4% of Welbilt's stock, and David and Richard Hirsch and Lawrence Gross retained 36.6% of Welbilt.  The transaction was structured as a leveraged buyout (LBO), and Welbilt borrowed the need money from banks.  David Hirsch, Richard Hirsch, and Lawrence Gross became Consolidated's only directors for the first six months after the LBO.

In February of 1989, Welbilt forced Consolidated to issue a $20 million dividend in the form of a ten-year note payable with interest at the rate of 13.75%.  Later that month, Welbilt also took $6.9 million in cash from Consolidated.  Although Consolidated's records reflected this taking as a dividend, it was never formally declared or approved by Consolidated's board.

In November 1989, Welbilt had Consolidated issue an additional $10 million dividend, also in the form of a ten-year note payable with interest at the rate of 13.75%.  Additionally, Welbilt directed all of its subsidiaries, including Consolidated, to maximize cash flow.  Accordingly, Consolidated was to deposit all of the cash it collected from its operation into bank accounts controlled by Welbilt.  To reflect this, Welbilt instructed Consolidated to record the deposits as an asset.  This asset, however, was reduced by any money that Welbilt allowed Consolidated to spend in its daily operations and by charges it made on Consolidated for Corporate services.

During the same period in which Welbilt struggled with its LBO debt, Consolidated began to have problems with its horizontal furnaces.  Although Welbilt was aware of these problems, it continued to take money from Consolidated.  Welbilt took approximately $14 million of Consolidated's cash in 1989 and 1990.  As a result, Consolidated was forced to borrow $7 million from Tippecanoe County, Indiana to buy the equipment it need to manufacture the new furnaces which would replace its older line.  In March 1990, North Carolina's Attorney General began investigating the problems with the horizontal furnaces and concluded that they were defective and that compensation was warranted.  In 1992, expert engineers concluded that the heat exchangers in the furnaces needed to be redesigned.  In 1993, the Consumer Product Safety Commission (CPSC) investigated a vent collar defect in Consolidated's furnaces.  During this investigation, CPSC also became aware of the exchanger problem with the furnaces and more investigations began.  Additionally, a group of consumers in California was threatening a class action law suit – the Salah Class Action Suit.  Consolidated also faced numerous warranty problems with its customers.  As the failure rate of the exchangers increased, Consolidated's customers incurred large warranty expenses and looked to

3

Consolidated for reimbursement.

In 1994, Welbilt decided to sell Consolidated.  This was difficult in light of the problems outlined above along with a $30 million debt in dividend notes.  To make Consolidated more attractive, Welbilt cancelled the dividend notes in 1995.  In 1996, William Hall emerged as a prospective buyer.  Hall failed to secure financing for his initial offer, however, and the sale was not completed.

Meanwhile, the CPSC re-instituted its investigation of the horizontal furnaces and the Court in the Salah action granted class certification.  In September 1997, the CPSC asked Consolidated to recall all furnaces in California.  In January 1998, Mr. Hall was able to purchase Consolidated by pledging Consolidated's remaining assets to Finova Capital Corporation for $7 million which was transferred to Welbilt.

Four months after the sale to Hall, Consolidated filed a petition for relief under chapter 11 of the United States Bankruptcy Code.  On May 10, 1999, Consolidated, as debtor in possession, initiated adversary proceeding 99-4022 seeking damages from Enodis Corporation f/k/a Welbilt Corporation, Welbilt Holding Company, Marion H. Antonini, Daniel Yih, Richard Hirsch, David A. Hirsch, and Lawrence Gross on 17 counts.  A trustee was appointed in the Chapter 11 case and was substituted as the plaintiff in this action.  On August 11, 2000, Consolidated's bankruptcy case was converted to chapter 7.

II.      Issues

The Cross-Appellant raises three issues for review:

1.       Whether the Bankruptcy Court erred in holding that the Trustee did not have standing to pursue his claims for alter ego and veil piercing liability (Counts XI and XVI) against Defendant Enodis Corporation.

4

2.      Whether the Bankruptcy Court erred in holding that the Trustee could not pursue breach of fiduciary duty claims against Welbilt.

3.      Whether the Bankruptcy Court erred in granting summary judgment in favor of Defendants Richard L. Hirsch, David A. Hirsch, and Lawrence R. Gross on Counts I and X of the Complaint on the basis that the statute of limitations had run on the claims against them.

III.    Standard of Review

A district court reviews a bankruptcy court's findings of fact for clear error.  *In re Smith*, 286 F.3d 461, 464-65 (7th Cir. 2002).  When reviewing a finding of fact, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004).  "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."  *Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985).  A finding is clearly erroneous if the bankruptcy court's determination leaves the reviewing court with the definite and firm conviction that the bankruptcy court committed a mistake.  *See In re Porter*, 202 B.R. 109, 120 (N.D. Ind. 1996).  Issues of law and mixed questions of law and fact are reviewed *de novo*. *Mungo*, 355 F.3d at 974.  A district court may affirm, reverse, or remand the bankruptcy court's ruling.  *See Smoker v. Hill Assoc., Inc.*, 204 B.R. 966, 970 (N.D. Ind. 1997).

In non-core proceedings, "the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(d).  The district court may accept, reject, or modify the proposed findings of fact and conclusions of law, receive further evidence, or

5

recommit the matter to the bankruptcy judge with instructions.  Fed. R. Bankr. P. 9033(d).

      IV.     Discussion

          A.     Alter Ego/Veil Piercing Claims

The Trustee challenges the Bankruptcy Court's ruling that the Trustee did not have standing to bring alter ego/veil piercing claims against Welbilt and Holding.  Specifically, the Bankruptcy Court found that the Trustee lacked standing under § 541 of the Bankruptcy Code because a corporation may not sue its own shareholder to hold them liable for its debts – that is, a corporation may not pierce its own veil – under Indiana law.  Decision at 32.  The Bankruptcy Court also found that Mr. Hall – debtor's shareholder on the date of the petition – could not have brought a veil piercing claim in a derivative action against the Defendants.

In challenging this finding, the Trustee relies on *Koch Refining v. Farmers Union Central Exch., Inc.*, 831 F.2d 1339 (7th Cir. 1987).  The Court in *Koch* stated that, "[w]e now find that, under Illinois and Indiana law as well, a bankruptcy trustee can bring an alter ego claim of action."  *Id.* at 1346.[3]  Significantly, however, the Court explicitly stated that that finding was a general proposition, and added that "an alter ego claim depends on the circumstances of the case; therefore, the posture of the trustee may be determined by the facts."  *Id.* at 1346 n.7.  While this Court disagrees with the Bankruptcy Court's initial finding that the Trustee did not have standing to bring its alter ego/veil piercing claims under § 541, it agrees with the Bankruptcy Court's ultimate legal conclusion that the Trustee's claims fail under this section.

The Trustee in this case has rested on his standing arguments, and has not shown that

---

[3]This Court is well aware of *Reiser v. Residential Funding Corp.*, 380 F.3d 1027, 1029 (7th Cir. 2004), but it is of little help to the Trustee in this case.  Standing is not the only issue involved in the alter ego/veil piercing claims.

"the corporate form was so ignored, controlled or manipulated that it was merely the

instrumentality of another and that the misuse of the corporate form would constitute a fraud or

promote injustice." *National Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 265

(7th Cir. 1996); *see also Winkler v. V.G. Reed & Sons, Inc.*, 638 N.E.2d 1228, 1234 (Ind. Ct. App.

1994) ("Indiana courts are extremely reluctant to disregard corporate identity.").

The Bankruptcy Court also held that the Trustee could not bring his veil piercing claims

under § 544(a) of the Bankruptcy Code. Section 544(a) allows a trustee to exercise all the

powers of a hypothetical creditor that comes into existence as of the date of the petition. 11

U.S.C. § 544(a)(1). Section 544(a)(1) grants a trustee the rights and powers of a judgment lien

creditor under state law, which include the right to bring a veil piercing/alter ego suit to collect

judgment from the debtor's alter ego. *See Lamber v. Farmers Bank*, 519 N.E.2d 746, 748-49

(Ind. Ct. App. 1988). But the Bankruptcy Court held that the Trustee could not assert a veil

piercing/alter ego claim under this provision. It stated:

> [T]he trustee cannot successfully assert a veil piercing/alter ego claim against the
> defendants under § 544(a) because that section imposes an important time limit
> on a trustee's powers. The trustee is limited to the rights of a creditor who came
> into existence on the date of the petition – in this instance May 28, 1998. As of
> that date, Welbilt and Holding were no longer in the picture. Mr. Hall was the
> debtor's new and only shareholder. The hypothetical creditor that came into
> existence at that time could seek to pierce the corporate veil only as to Mr. Hall.
> The trustee cannot go back in time and ask the court to hold Welbilt and Holding
> personally liable for debts to hypothetical creditors that did not arise until months
> after they had terminated any involvement or relationship with Consolidated.

Decision at 34. This Court agrees.

The Trustee relies on *Fairfield Development, Inc. v. Georgetown Woods Senior*

*Apartments*, 768 N.E.2d 463 (Ind. Ct. App. 2002) to argue that ownership of the debtor

corporation is not essential to pierce the corporate veil. While that may be true as a basic

7

proposition, the Bankruptcy Court correctly recognized that *Fairfield* is distinguishable from the case at hand.  The Court in *Fairfield* upheld a judgment to pierce the corporate veil against an individual that did not own and was not an officer or director of the debtor corporation.  *Id*. at 473.  But the Court reasoned that piercing the veil was proper because the individual held liable had controlled the corporation and everyone who dealt with the corporation thought they were dealing with him.  *Id*.  That is not the case here.  Critically, the Trustee fails to show that Welbilt or Holding controlled Consolidated on May 28, 1998 or that anyone involved with Consolidated on that date had reason to believe they were actually dealing with Welbilt or Holding.

> B.       Breach of Fiduciary Duty

The Trustee challenges the Bankruptcy Court's dismissal of the Trustee's breach of fiduciary duty claims against Welbilt.  Specifically, the Bankruptcy Court stated that it could not find "an Indiana case for the proposition that a corporation owes a fiduciary duty to a subsidiary of its subsidiary."  Decision at 31.  The Trustee contends that the Decision ignored principles of Indiana agency law in reaching its conclusions.  Specifically, the Trustee argues that Welbilt used its control over Holding to place its senior officers on the board of Consolidated.  It did so, according to the Trustee, to "ensure[] that Consolidated allowed Welbilt to loot it of all its cash, profiting Welbilt and other defendants."  Brief of Cross-Appellant at 39.

While it is true that a parent of a corporation has a fiduciary duty to its subsidiary, the Trustee correctly pointed out that no Indiana case stands for the proposition that a corporation owes a fiduciary duty to a subsidiary of its subsidiary.  The Court declines the invitation here to use common law agency principles to extend the fiduciary duties of a corporation.

> C.       Statute of Limitations

8

The Trustee argues that the Bankruptcy Court erred in granting summary judgment to Defendants Hirsch, Hirsch, and Gross on the Trustee's breach of fiduciary duty claims.  The Bankruptcy Court found that the Trustee's claims against those Defendants were barred by the applicable two-year statute of limitations.  The Court agrees.

Indiana law applies a two-year statute of limitations to breach of fiduciary duty claims. Ind. Code § 34-11-2-4; *Shriner v. Sheehan*, 773 N.E.2d 833, 846 (Ind. Ct. App. 2002).  The Trustee argues that the limitations period can and should be tolled by the application of the adverse domination doctrine.  *Resolution Trust Corp. v. O'Bear, Overholder, Smith & Huffer*, 840 F. Supp. 1270, 1284 (N.D. Ind. 1995).  The adverse domination doctrine is an equitable doctrine that applies when the entity to whom the cause of action belonged is controlled by wrongdoers.  *Id*.  The doctrine is "based on the premise that a corporation is so controlled by directors or officers engaged in wrongdoing that discovery of the misconduct is impossible." *Mutual Sec. Life Ins. Co. by Bennett v. Fidelity and Deposit Co. of Maryland*, 659 N.E.2d 1096, 1102 (Ind. Ct. App. 1995).  "The statute of limitations begins to run when the wrongdoers lose control of the entity." *Resolution*, 840 F. Supp. at 1284.

The Bankruptcy Court made the following findings on this issue:

Hirsch, Hirsch, and Gross ceased to be directors of Consolidated on October 15, 1990.  Whatever domination they might have exercised over the debtor ended at that time.  They were replaced by Marion H. Antonini, a disinterested outsider from the standpoint of any wrong which his predecessors may have committed. As the debtor's sole director, Antonini represented both "a single disinterested director" and a "disinterested majority" of the board.  Thus, as of October 15, 1990, the interests of the existing board were no longer adverse to the debtor.

Bankr. Docket No. 413 at 5 (footnote omitted).  Therefore, the Bankruptcy Court held, any claim the Trustee had against these particular Defendants accrued on October 15, 1990.  Because the

Trustee filed the action on May 10, 1999, his claims against these Defendants were time-barred.

The Trustee argues that "Consolidated's Board was always completely dominated by potential defendants in a lawsuit challenging the board's actions and Antonini and Yih would not have sued the Hirsch Defendants because their liability was the same as that of the Hirsch defendants." Brief of Cross-Appellant at 44. Consequently, according to the Trustee, the "first instance when a Consolidated owner had a reason to stop the fraud was when Bill Hall purchased Consolidated's stock on January 6, 1998 and became its president. Therefore, the statute of limitations period was tolled until January 6, 1998." Brief of Cross-Appellant at 44.

This Court agrees with the Bankruptcy Court's conclusion and finds its reasoning to be sound. The adverse domination doctrine focuses on the wrongdoers' ability to control the corporation. In this case, when Hirsch, Hirsch, and Gross were removed from the Board, they lost all conceivable ability to control the actions of the Corporation. That they were succeeded by directors who may have been aligned with Welbilt does not justify, as least as to these Defendants, tolling the statute of limitations. *See Shapo v. O'Shaughnessy*, 246 F.Supp. 2d 935, 953 (N.D. Ill. 1992) ("if the doctrine is applicable, the statute of limitations only begins to run again when the *defendants lose control of the entity*.") (emphasis added).

D.      Trustee's Objections

1.      Business Judgment Rule

The Trustee objects to the Bankruptcy Court's finding that, on the fiduciary duty claims, the Defendants are entitled to the protection of the Indiana business judgment rule. Specifically, the Trustee argues that the Defendants are not entitled to protection under the rule because they: (1) failed to investigate as required by statute; (2) were not disinterested (3); delegated their

10

duties; and (4) acted recklessly and willfully.

The Bankruptcy Court found that, "[u]nder Indiana law, the standard of liability for these directors is recklessness or intentional misconduct." Decision at 30. The Court stated that the "[T]rustee has not proven that these directors acted with a conscious disregard in assenting to or approving the transfers to Welbilt. The mechanism which allowed Welbilt to receive interest payments on account of the dividend notes was put into place before Antonini and Yih ever became directors." Decision at 31.

The Court agrees with the Bankruptcy Court that the proper standard of liability for these Defendants is recklessness or intentional misconduct. *See G&N Aircraft, Inc. v. Boehm*, 743 N.E.2d 227, 238-39 (Ind. 2001) (director not liable for action taken as director unless the breach constitutes willful misconduct or recklessness). First, the Trustee has not presented evidence that Antonini and Yih failed to investigate. His reliance on a single footnote in the Bankruptcy Court's decision is simply not enough. Second, the Trustee fails to cite any binding authority that would prevent the application of the business judgment rule simply because Antonini and Yih invested in Welbilt. Similarly, the Trustee has failed to cite any binding authority that prevents application of the business judgment rule to a director who delegates some of his duties.

The Trustee also failed to show that Antonini and Yih acted recklessly or willfully. Under Indiana law, directors are presumed to have made informed, good faith, and honest business decisions. *Shepard v. Meridian Ins. Group, Inc.*, 137 F.Supp. 2d 1096, 1103 (S.D. Ind. 2001). That presumption cannot be overcome with proof of negligence. *Id.* Indiana's version of the business judgment rule is "strongly pro-managment." *Id.* (quoting *G&N Aircraft*, 743 N.E.2d at 238). As the Defendants correctly note, directors are entitled to rely on advice from

11

accountants and attorneys in discharging their duties.  The record indicates that Antonini and Yih

relied on such advice when allowing the notes to remain on Consolidated's books.  The Trustee

has not shown that the Defendants had knowledge that made their reliance on this advice

unwarranted.  As the Bankruptcy Court noted, their conduct may have been negligent, but the

Trustee has not shown that it was willful misconduct or recklessness.

> 2.      Fraudulent Transfer, Corporate Law, and Common Law Claims

The Trustee argues that this Court should enter judgment against Holding on Counts II-

VII, X, XII, and XV under 11 U.S.C. § 550(a)(1), which allows a trustee to recover avoided

transfers "from the initial transferee of such transfers or the entity for whose benefit the transfers

were made."  The Court declines to do so.  Judgment in the entire amount has been entered

against Welbilt, and the Trustee may obtain only a single satisfaction of the judgment amount.

11 U.S.C. § 550(d).

> V.      Conclusion

Based on the foregoing, the judgment of the Bankruptcy Court is **AFFIRMED**.  The

Bankruptcy Court's proposed findings of fact and conclusions of law are **ACCEPTED** in their

entirety.  Accordingly, the Court hereby orders that judgment be entered in favor of Defendants

Welbilt Holding Company, Marion H. Antonini, Daniel Yih, Richard L. Hirsch, David L. Hirsch,

and Lawrence Gross and that the Trustee recover nothing from them.

**SO ORDERED**.

**Date: October 31, 2006**                          s/Allen Sharp
                                        **ALLEN SHARP, JUDGE**
                                        **UNITED STATES DISTRICT COURT**